IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cv-20520-KMM

JOHNNIE ABETO DELGADO, as guardian
for GEMMA CANDOLITA, a disabled adult,

    Plaintiff,

vs.

THE PRUDENTIAL INSURANCE CO. OF
AMERICA, and GUARDIAN HEALTH CARE
PROVIDERS INC.,

    Defendants.
_____/

## MEMORANDUM OF DECISION

### I.   INTRODUCTION

This matter is before the Court for decision following a one day, non-jury trial held Monday, January 23, 2012, in Miami, Florida. Plaintiff, Johnnie Delgado, acting as the guardian for Gemma Candolita, seeks equitable relief and damages against Defendants Guardian Healthcare Providers Inc. ("Guardian") and The Prudential Insurance Company of America ("Prudential").

Gemma Candolita was employed as a nurse by Guardian. Joint Pretrial Stip. at 5 (ECF No. 56). Guardian offered employees life insurance under an Employee Retirement Income Security Act (ERISA) governed plan with Prudential as the claims administrator and insurer. Id. The plan offered life insurance coverage for Gemma Candolita and her husband, Estaban Candolita. Id. At issue in this case are two types of coverage associated with the plan. The plan offered Dependent Term Life coverage on Estaban Candolita which would pay Gemma

1

Candolita benefits upon her husband's death. Id. The plan also provided life insurance coverage on Gemma Candolita which included an accelerated benefits payment in the event of terminal illness ("accelerated benefits"). Id. Guardian was responsible for enrolling its employees in the plan and Gemma Candolita enrolled on March 17, 2009. Id.

Tragically, on April 12, 2009, Estaban Candolita shot Gemma Candolita and their daughter, and then took his own life by turning the gun on himself. Id. Gemma Candolita was hospitalized for one month, and managed to survive the shooting. Her daughter survived as well. Id. at 6.

Gemma Candolita sought benefits under the Dependent Term Life coverage policy on Estaban Candolita, and expected a payment of $150,000 from that policy. This is because when she enrolled in the plan, she elected to receive additional optional coverage of $125,000, beyond the $25,000 in basic coverage. Id. at 5. Prudential only paid $25,000 in coverage on the policy, because it claimed that it had not received an "Evidence of Insurability" form that was required to be submitted on behalf of Estaban Candolita. Id. at 6. Gemma Candolita claims that her employer Guardian never provided her with the required form. Id.

Gemma Candolita also sought payment of accelerated death benefits from the insurance policy covering her personally. Id. Prudential denied the claim based on its assessment that Gemma Candolita did not meet the policy definition of "terminally ill" when she submitted the claim nine months after the shooting. Id. at 7.

Johnnie Delgado, acting as guardian for Gemma Candolita, who is now disabled, filed two separate suits in this case, and the Court consolidated the cases because they both arise from the same nucleus of operative facts. See September 16, 2011, Paperless Order, Case No. 11-cv-20774 (ECF No. 31). Gemma Candolita's first group of claims stems from Prudential's denial of

payment of Dependent Term Life benefits on the policy covering Estaban Candolita. As a result of this denial, Gemma Candolita asks the Court to fashion an equitable remedy under 29 U.S.C. § 1132(3)[1] wherein Guardian and Prudential would be required to consider the requisite Evidence of Insurability form retroactively. Amended Compl., at 7 (ECF No. 9).

Gemma Candolita's other claims are based upon Prudential's denial of payment of the accelerated benefits from her life insurance policy. She seeks damages against Prudential for failing to pay these benefits. Amended Compl., Case No. 11-cv-20774, at p. 5 (ECF No. 13). The Court, having fully considered the testimony and documentary evidence received at trial, as well as the applicable law and arguments of counsel, oral and written, now finds that Plaintiff shall take nothing on her claims and judgment shall be entered in favor of Guardian and Prudential.

## II.   DISCUSSION

### A.   Plaintiff's Claim Against Guardian

During the trial Guardian presented a copy of the 2009 Benefits Enrollment Waiver Form signed by Gemma Candolita. Admin. Rec. Estaban Candolita Ex. 1 at 000100.[2] Directly above

---

[1] A civil action may be brought . . .
    (3) by a participant, beneficiary, or fiduciary
        (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
        (B) to obtain other appropriate equitable relief
            (i) to redress such violations or
            (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(3).

[2] This exhibit was provided as part of the Administrative Record of Estaban Candolita provided by Prudential. However, because the Acknowledgment/Waiver section of the form was illegible on the copy provided, Defendants obtained another copy and the Parties agreed to have the text of that section read into the Court's record. Tr. 85:8-86:9.

3

Gemma Candolita's signature is an acknowledgment and waiver that provides,

> Acknowledgment/Waiver: If electing coverages, I understand and agree that I am applying for the coverages selected above, and; (1) That any contract which may be issued to me will be subject to all the terms and conditions of the Group Agreement . . . .

The Parties agree that the Group Agreement that this acknowledgment refers to is the Prudential Insurance Plan provided to the Court as Prudential's Exhibit 1 at 000302. The policy clearly requires that if the employee elects coverage on her spouse that is above the "non-medical" limit that Evidence of Insurability must be submitted to Prudential. There is no dispute that Gemma Candolita never provided this Evidence of Insurability form on behalf of her husband. What is at dispute is whether Guardian provided Gemma Candolita with this form and informed her of the requirement that it be submitted in order to enroll Estaban Candolita in coverage above the non-medical limit.

In presenting evidence that it did provide the Evidence of Insurability form to Gemma Candolita and notified her of the requirement to submit the form in order to obtain coverage, Guardian elicited testimony from its Director of Human Resources, Jane Haddock. Haddock testified that she traveled to Miami Beach in March 2009 to enroll employees in Guardian's benefit plan. Tr. 119:16-121:21. She explained that her staff provided enrollment packets for each employee, including Gemma Candolita, and that those packets included the enrollment forms and the additional evidence of insurability form that needed to be filled out in order to elect increased coverage beyond the $25,000 basic coverage for her spouse. Haddock testified that on March 17, 2009, she met individually with Gemma Candolita and explained the insurance plan and that her election to purchase the higher level of coverage on her husband would require submission of the Evidence of Insurability form required by Prudential. Tr. 121:22-123:5.

4

Haddock additionally pointed out her handwriting on Gemma Candolita's 2009 Benefits Enrollment Waiver Form, as further evidence of her meeting with Gemma Candolita. Tr. 131:17-134:19.

As the trier of fact in this case, the Court may make judgments regarding the credibility of the witnesses that come before it. See Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1504 (11th Cir. 1993) (citing Chris Berg, Inc. v. Acme Mining Co., 893 F.2d 1235, 1238 n.2 (11th Cir. 1990) (recognizing that the court must weigh the evidence and make credibility determinations)). A witness' testimony may be believed in full, in part, or entirely discounted. See Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 576 (1951).

The Court found Haddock's account of her meeting with Gemma Candolita credible and evidence that Guardian did in fact provide Gemma Candolita with the necessary forms to elect higher coverage. Haddock testified in detail regarding the information packets that Guardian provided during the conference it held for employees in March 2009. Gemma Candolita's own testimony acknowledged that she attended that conference, although she stated that she never met with Haddock individually.

Gemma Candolita's claim is further undermined by her signature on the 2009 Benefit Enrollment/Waiver Form. Her signature acknowledges that she understands that the policy is subject to the terms and conditions of the Group Agreement, that is Prudential's Insurance Plan, which clearly states that she must submit an Evidence of Insurability form for her spouse in order to enroll in the higher level of benefits.

Gemma Candolita's cause of action for equitable relief against Guardian therefore fails.

B. Plaintiff's Claim Against Prudential for Accelerated Benefits

The insurance plan in this case is an ERISA governed plan and Prudential is the claims

5

administrator that reviews claims and either approves or disapproves them. The Supreme Court has established three distinct standards for reviewing an ERISA plan administrator's decision. They are: (1) de novo, where the plan does not grant the administrator discretion; (2) arbitrary and capricious, where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious, where the plan grants the administrator discretion, but the administrator has a conflict of interest. Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195-1196 (11th Cir. 2010) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)). The Eleventh Circuit provides a six-step analysis to guide district courts in reviewing an administrator's benefits decision.[3]

---

[3] The steps in evaluating an administrator's decision outlined in Capone are:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Capone, 592 F.3d at 1195 (citations omitted).

Prudential is both the claims administrator for this plan and the insurer, who pays the claims. This dual role requires that if Prudential, as claims administrator, finds a claim is valid, it must then pay the claimant from its own coffers. The Supreme Court in Metro. Life Ins. Co. v. Glenn, dealt with the same type of situation. 554 U.S. 105, 115 (U.S. 2008). Metro Life Insurance Co. was both the insurer and the claims administrator for an ERISA governed plan. The Court instructed that in such instances "a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (U.S. 1989) (citation omitted)).

In the instant case, the insurance policy documents reveal that Prudential is vested with discretion in reviewing claims under this plan. See Tippitt v. Reliance Std. Life Ins. Co., 457 F.3d 1227, 1233-34 (11th Cir. 2006) (citing Levinson v. Reliance Std. Life Ins. Co., 245 F.3d 1321, 1325 (11th Cir. 2001). This Court reviews Prudential's decision under the heightened arbitrary and capricious standard, cognizant of the conflict that Prudential faces in being both the claims administrator and the insurer in this case. Prudential argues that it did not abuse this discretion, and that its decision was neither arbitrary nor capricious, but instead was reasonable.

Prudential's administrative record entered into evidence at trial indicates that while Gemma Candolita was hospitalized in April 2009, Ms. Haddock, the aforementioned Director of Human Resources at Guardian, submitted a claim on Gemma Candolita's behalf, for payment of accelerated death benefits. Tr. 60:3-62:19. Prudential determined that Haddock's submission was incomplete because it lacked a Prudential form known as an Attending Physician Certification Form ("Certification Form"). Prudential Ex. 2, Admin. Rec. at 000029. Gemma Candolita's completed application was finally submitted to Prudential on January 6, 2010. Id. at 000230-232. The application included a Certification Form signed by Dr. Douglass Slotkoff. Id.

at 000100-107. The Certification Form is in large part a questionaire provided by Prudential, but Gemma Candolita's submission includes five pages of attached records detailing her arrival in the trauma unit, subsequent emergency brain surgery to remove a hemorrhage and gunshot wound debris, and post-operative status. Id. The first page of the Certification Form states, "To qualify for a benefit, your patient must have a life expectancy of twelve (12) months or less. Does your patient meet this requirement?" Id. On December 23, 2009, nine months after the shooting and Gemma Candolita's subsequent recovery, Dr. Slotkoff signed the Certification Form and answered "no" to the question of whether Gemma Candolita had a life expectancy of twelve months or less. Id. Gemma Candolita had been discharged from the hospital for approximately eight months, and was recovering, and Dr. Slotkoff's indication on the form reflects that she did not have a life expectancy of twelve months or less at that point. One of Prudential's physicians, Dr. Albert Kowalski, reviewed Gemma Candolita's claim on January 15, 2010. Id. at 000003-4. Dr. Kowalski cited and affirmed Dr. Slotkoff's December 23, 2009, assessment. Dr. Kowalski noted,

> The insured is 9 months status post gunshot wound to the head and appears to be stable. There are no medical records to support any diagnosis or condition that would result in a life expectancy of 12 months or less. In addition, her physician, Dr. Slotkoff, did not opine that the insured's expectancy is 12 months or less.

Id.

Prudential denied the claim and Gemma Candolita subsequenly appealed, providing an affidavit from Dr. Malcom Bullock, her treating physician when she reported to the hospital on April 12, 2009. Id. at 000189. Dr. Bullock's affidavit states,

> Gemma Candolita suffered a gunshot wound to her head on April 12, 2009, and had an extremely serious brain injury as a result. Because of the gunshot wound on April 12, 2009, she was comatose and in acute respiratory failure. Medically, she was not expected to survive. More likely than not [there was] a reasonable

8

> degree of medical probability she would not have lived more than a year. The fact that she is still alive today is a miracle.

Id.

Despite this evidence, on January 5, 2011, the Claims Administrator held firm to her prior ruling. She again denied Gemma Candolita's claim, and cited the fact that she did in fact survive the ordeal, as valid grounds for the denial. Prudential Ex. 2, Admin. Rec. at D000230-32.

At trial the Plaintiff called Dr. Bullock, who testified that in his opinion, Gemma Candolita did not have more than twelve months to live when she entered his care upon arrival at the hospital. Tr. 26:3-27:1. However, Dr. Bullock admitted that the record provided to the Claims Administrator would not have revealed this diagnosis that Gemma Candolita had less than twelve months to live. Tr. 31:7-31:24. The Court specifically queried Dr. Bullock, "Is there anything in the notes that were prepared contemporaneously with the treatment -- and those notes are 103 to 108 -- from which an objective outside reader of those notes could glean that this individual was not going to survive more than one year?" To which Dr. Bullock replied, "No, sir, there's not." Id.

The Claims Administrator's initial decision was therefore grounded in the evidence before her. Upon appeal, the Claims Administrator had the affidavit of Dr. Bullock that stated that when she reported to the hospital and was under his care, Gemma Candolita did not have a life expectancy beyond twelve months. However, at the point at which this appeal took place in January 2011, nine months after the incident, the Claims Administrator also had the benefit of knowing that Gemma Candolita had in fact survived. The Claims Administrator also had Dr. Slatkoff's December 2009, opinion that Gemma Candolita did not have less than twelve months to live. Faced with this information, the Claims Administrator determined that Gemma

9

Candolita was not eligible to receive accelerated benefits. This decision was neither arbitrary nor capricious and is due to be affirmed.

Plaintiff's claim for damages against Prudential for failing to pay accelerated death benefits is therefore denied.

### III. CONCLUSION

For the foregoing reasons, the Court fails to find that either Guardian or Prudential are liable for Plaintiff's claims. Final Judgment will be entered for Defendants by separate Order.

DONE AND ORDERED in Chambers at Miami, Florida this 29th day of February, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record